FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 1 1 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ROBERT DINGLE JR.,

                Plaintiff,

-against-

BIMBO BAKERIES USA/ENTENMAN'S,

                Defendant.

------------------------------------------------------------------x
ROBERT DINGLE JR,

                Plaintiff,

-against-

ENTENMANN'S/BIMBO BAKERIES USA,

                Defendant.

------------------------------------------------------------------x
ROBERT DINGLE JR,

                Plaintiff,

-against-

THE BAKERS UNION, LOCAL 53 (BCTGM),

                Defendant.

------------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-02879 (CBA) (VVP)

13-CV-03913 (CBA) (VVP)

13-CV-04141 (CBA) (VVP)

**AMON, Chief United States District Judge.**

Plaintiff Robert Dingle, Jr., has brought three related actions against his former employer, Bimbo Bakeries USA/Entenmann's ("Entenmann's") and his union, Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, Local No. 53 ("Local 53"). Against Entenmann's, Dingle asserts claims of sexual harassment and retaliation under Title VII of the

Civil Rights Act of 1964, claims under the Fifth and Fourteenth Amendments of the United States Constitution, and related state law claims. Against Local 53, he asserts claims of breach of the union's duty of fair representation and defamation.

On December 16, 2013, Magistrate Judge Victor V. Pohorelsky issued a Report and Recommendation ("R&R") recommending that the Court dismiss each of the three complaints in their entirety.[1] Dingle filed objections to the R&R on January 30, 2014, and both defendants thereafter filed memoranda in opposition to those objections. Having reviewed de novo those parts of the R&R to which Dingle properly objected, the Court adopts the R&R for the reasons stated below, and dismisses each of Dingle's complaints.[2]

## BACKGROUND

The Court assumes the parties' familiarity with the facts and background of this litigation, and incorporates the statement of facts set forth in the R&R.

## STANDARD OF REVIEW

When deciding whether to adopt an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept those portions of the R&R to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."

---

[1] Separately, on January 22, 2014, Magistrate Judge Pohorelsky issued a Report & Recommendation recommending that the Court deny Dingle's motion to compel Entenmann's to pay the balance due from an agreement reached between the two parties to settle Dingle's wrongful termination claims. The Court adopts that Report & Recommendation in its entirety and denies Dingle's motion to compel payment, see infra Part I.D.2.

[2] The R&R determined that, despite defendants' inclusion of exhibits with their motion papers that would not normally be considered on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it would be improper to convert these motions into summary judgment motions because the defendants did not serve Dingle with a notice required to be served on pro se plaintiffs in such circumstances by Local Civil Rule 12.1. The Court notes, however, that Rule 12.1 notices were attached to each of the three motions to dismiss at issue in this case. Nonetheless, resolution of these motions does not require reference to any documents other than the pleadings and documents referenced in or integral to the complaint, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002), and the Court therefore declines to convert the motions into ones for summary judgment.

2

Jarvis v. N. Am. Globex Fund, L.P., 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (internal quotation marks omitted). When objections are made "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## DISCUSSION

### I. Claims Against Entenmann's

The R&R interpreted Dingle's filings as raising nine different claims against Entenmann's: (1) a Title VII hostile work environment claim based on sexual harassment; (2) a Title VII retaliation claim based on his suspension and termination following his complaints of sexual harassment; (3) due process and equal protections claims under the Fifth and Fourteenth Amendments to the United States Constitution; (4) a defamation claim based on alleged statements made by his coworkers; (5) state-law discrimination and retaliation claims brought under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"); (6) a breach of contract claim based on Entenmann's withholding of taxes from a payment made to Dingle pursuant to a settlement agreement; (7) a claim based on allegations that Entenmann's violated its own internal policies in handling Dingle's complaints; (8) a claim of "deliberate indifference"; and (9) a claim of intentional infliction of emotional distress.

#### A. Title VII Hostile Work Environment

Although Dingle generally objects to the R&R's dismissal of his Title VII hostile work environment claim, he fails to challenge the specific – and dispositive – determination by Judge Pohorelsky that Dingle had not alleged any facts tending to show that his harassment was on account of his gender. Rather, in his objections, Dingle simply lists additional examples of

3

conduct that he believes constitutes harassment, and suggests that the harassment was actionable because of his status as an employee with a criminal record.

The Court finds no error in the R&R's determination that Dingle had failed to allege that he was harassed because he was male. Dingle does not allege that any of his harassers were homosexual, does not suggest that his harassers were motivated by a general hostility to men in the workplace, and offers no evidence that members of different genders were treated differently, see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998) (describing methods by which plaintiff may establish gender-based harassment in same-sex harassment cases). The Court agrees with Judge Pohorelsky that the "allegations showed, at best, that [Dingle's] coworkers had a personal animus against him." R&R at 11-12.

Furthermore, Dingle's assertion that he was subjected to discrimination based on his criminal history is irrelevant to his Title VII claim. "Plaintiff's status as a convicted felon is not a protected class under Title VII." Gillum v. Nassau Downs Regional Off Track Betting Corp. of Nassau, 357 F. Supp. 2d 564, 569 (E.D.N.Y. 2005). Thus, even if the facts raised an inference that Dingle was subjected to discrimination because of his criminal history, his Title VII claims would fail. The Court therefore adopts the R&R's recommendation that Dingle's Title VII hostile work environment claims be dismissed.

## B. Title VII Retaliation

The R&R recommended dismissal of Dingle's retaliation claim on two grounds: his failure to allege facts suggesting that he reasonably believed that he had engaged in a protected activity, and his failure to allege facts from which the Court could infer a causal connection between his alleged protected activity and the adverse employment action. Dingle objects to those determinations, providing several other examples of conduct that he believes to be

retaliatory, and alleging that he was told during arbitration proceedings following his termination that he was fired for making too many complaints to the company's complaint hotline.

Once again, Dingle's objections fail to address the central dispositive basis for the R&R's recommendation of dismissal; namely, the finding that he did not reasonably believe that he had engaged in protected conduct. Nothing in Dingle's complaints suggest "that he possessed a good faith, reasonable belief" that the conduct he had complained of actually constituted gender discrimination, see Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (internal quotation marks omitted), as there is absolutely no evidence that the harassment he suffered was related to his gender. Neither Dingle's new allegations of harassment suffered after complaining about his coworkers to management nor his contention that he was told that he was fired for making complaints have any bearing on whether he reasonably believed he had suffered from unlawful harassment. The Court therefore accepts the R&R's recommendation that Dingle's Title VII retaliation claims be dismissed.

## C. Constitutional Claims

Dingle makes no objection to the R&R's dismissal of his claims purportedly brought under the Fifth and Fourteenth Amendments of the United States Constitution. Because claims for violations of the Equal Protection Clause and Due Process Clause can only be brought against government actors, see Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999) ("[t]o state a claim for an equal protection violation, appellants must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender"); Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982) ("the Due Process Clause protects individuals only from governmental and not from private action"), the Court finds no clear error in the R&R's recommendation that the constitutional claims against Entenmann's be dismissed.

5

### D. State Law Claims

Because Dingle's second action against Entenmann's ("Dingle II") was removed to federal court in part based on the diversity of the parties (see Dingle II Notice of Removal, Docket Entry ("D.E.") 1 ¶¶ 4, 6-7, 9), the Court considers the merits of Dingle's state law claims, each of which the R&R recommended dismissing. Dingle raises no objection to the recommendations of dismissal as to his defamation claims, his claims based on Entenmann's violation of its internal policies, or his "deliberate indifference" claim. Because the Court finds no clear error in the R&R's consideration of those claims, it dismisses those claims as against Entenmann's.

#### 1. *NYSHRL & NYCHRL*

Noting that the substantive provisions of the NYSHRL and the NYCHRL largely parallel Title VII, the R&R recommended dismissing Dingle's claims brought under both statutes for the same reasons it recommended the dismissal of Dingle's Title VII claims; namely, because Dingle failed to establish that his harassment was on account of his gender, see Hernandez v. Kaisman, 103 A.D.3d 106, 111-12 (N.Y. 1st Dep't 2012) (under NYSHRL and NYCHRL, "there can be no claim for sexual discrimination, including that based on a hostile work environment, unless the plaintiff was treated differently because of her sex" (emphasis in original)). For the same reasons that Dingle's objections were meritless with regard to his Title VII claims, his objections fail to establish a sexual harassment claim under either the NYSHRL or NYCHRL.

Dingle's objection that he suffered discrimination because of his criminal history, however, presents a more difficult question. Although the R&R did not address the issue, Dingle alleged in his complaint in Dingle II that during a meeting regarding his sexual harassment complaints, human resources manager Rina Carpano informed Dingle that Entenmann's had

6

learned of his criminal history, and told him "forget the whole thing [i.e., Dingle's complaint of sexual harassment] and we will let you keep your job." (Dingle II Compl. at 26.) In his objections to the R&R, Dingle suggests that Carpano was using his criminal record "as leverage" to "discourage [Dingle] from pursuing" his complaints against Entenmann's (Pl.'s Objections at 4), and that Entenmann's "refused to . . . properly address plaintiff's grievance because he is an ex-offender" (id. at 5).

Both the NYSHRL and NYCHRL prohibit any person from "deny[ing] . . . employment to any individual by reason of his or her having been convicted of one or more criminal offenses," N.Y. Exec. Law § 296(15); see also Admin. Code of the City of New York § 8-107(10)(a), subject to certain exception not at issue here, see N.Y. Corr. Law § 752. By their terms, both statutes prohibit only the "den[ial]" of employment on the basis of criminal history; neither includes criminal history within the list of protected characteristics on the basis of which an employer may not discriminate against an employee "in compensation or in terms, conditions or privileges of employment," N.Y. Exec. Law § 296(1)(a); Admin. Code of the City of New York § 8-107(1)(a); see also Allah v. City of New York Dep't of Parks & Recreation, 162 F. Supp. 2d 270, 275 (S.D.N.Y. 2001) ("[T]he New York Human Rights Law w[as] intended to protect applicants allegedly discriminated against at the time of hiring on the basis of a prior criminal record.").

Dingle pleads discrimination on the basis of his past criminal conviction, but has not alleged that he was in fact denied employment because of his criminal history, or any facts that would raise such an inference. Although his employment was ultimately terminated, he does not suggest that the termination was in any way related to his criminal history; rather, Dingle repeatedly alleges that he was terminated either because of his personal conflict with Douglas or

7

in retaliation for his sexual harassment complaints. At most, Dingle alleges that his criminal record was used as the basis for not addressing his grievances. (Pl.'s Objections at 5.) To the extent that Dingle relies on Carpano's threat to terminate him to support his allegation of unlawful discrimination, the threat itself makes clear that she was motivated entirely by his complaints against Entenmann's, and not his criminal history. The very fact that she offered to let him keep his employment if he withdrew the complaint suggests that, had he been fired at that moment, it would have been because of Dingle's frivolous harassment complaints and nothing more. Such conduct does not constitute a denial of employment on account of Dingle's criminal history.

The different standard for assessing what constitutes discrimination under the NYCHRL, as opposed to under Title VII or the NYSHRL, does not change this determination. Although New York courts have held that a plaintiff need only "demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of'" a protected status to state a claim under the NYCHRL, Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013) (quoting Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 78 (N.Y. 1st Dep't 2009)), that standard derives from the language of § 8-107(1)(a) of the NYCHRL "that proscribes imposing different terms, conditions and privileges of employment" based on enumerated characteristics, Williams, 61 A.D.3d at 75. That provision requires such a low threshold because forcing an employee to suffer unwanted conduct based on a protected characteristic "imposes a different term or condition of employment on her, even if the harassing conduct does not rise to the level of being 'severe and pervasive.'" Mihalik, 715 F.3d at 110. Unlike a claim of discrimination based on, inter alia, race or gender, a claim based on past criminal history is not actionable under § 8-107(1)(a), but under § 8-107(10)(a), which prohibits

the denial of employment, and not differing terms or conditions of employment. Thus, even under the NYCHRL, facts demonstrating that Dingle was treated differently than other employees because of his criminal history are insufficient to state a claim in the absence of allegations that he was actually denied employment. As such, even considering his claim of discrimination based on his prior criminal convictions, the Court accepts the R&R's recommendation that the NYSHRL and NYCHRL claims be dismissed.

### 2. *Breach of Contract*

Dingle's objections to the R&R's recommended dismissal of his breach of contract claim are meritless. The R&R found that because the Internal Revenue Code requires employers to collect taxes related to an employees' wages, Entenmann's properly withheld taxes from the settlement amount it agreed to pay Dingle to settle his wrongful termination claim. Dingle contends in his objections that the R&R's determination was improper, citing "26 C.F.R. Subd. 31.3402(g)," and arguing that the settlement payment constituted "supplemental wages" that are "taxed differently from regular wages." (Pl.'s Objections at 1-2.)

Dingle's objections have no legal basis. The R&R correctly examined the settlement agreement to determine what the agreed upon payment represented, and correctly determined that the amount was properly characterized as back pay, offered to resolve the unlawful termination claim, see Gerstenbluth v. Credit Suisse Sec. (USA) LLC, 728 F.3d 139, 143-45 (2d Cir. 2013); Noel v. N.Y. State Office of Mental Health Ctr. N.Y. Psychiatric Ctr., 697 F.3d 209, 213-14 (2d Cir. 2012). Because back pay constitutes "'wages' as defined under the Internal Revenue Code," Entenmann's was "required to withhold income and Federal Insurance Contributions Act ('FICA') taxes." Id. at 213. Furthermore, even if Dingle's contention that the settlement payment constituted "supplemental wages" was correct, the regulation he cites –

9

presumably 26 C.F.R. § 31.3402(g)-1 – provides for special tax rules only on supplemental wages in excess of $1,000,000, far greater than the amount at issue here, or for vacation allowances. The Court therefore finds that Entenmann's was legally required to withhold taxes on Dingle's settlement payment, and adopts the R&R's recommendation that Dingle's breach of contract claim be dismissed.

Having found that Entenmann's was correct to withhold payroll taxes from Dingle's settlement payment, the Court also adopts Judge Pohorelsky's Report & Recommendation of January 22, 2014, which recommended denying Dingle's motion to compel payment of the balance of the settlement amount. Entenmann's submitted an affidavit from its payroll manager detailing the exact amounts withheld for various taxes. That document makes clear that there is no basis for requiring further payments to Dingle, and his motion to compel payment is therefore denied.

### 3. *Intentional Infliction of Emotional Distress*

Finally, Dingle objects to the dismissal of his claim for intentional infliction of emotional distress, arguing that it was "integral" to his unlawful termination, and alleging that he had suffered from physical symptoms of emotional distress. The R&R, however, recommended dismissing Dingle's intentional infliction of emotional distress claims because it was brought well outside the one-year statute of limitations for such claims. Because Dingle does not challenge this dispositive determination, the Court accepts the R&R's recommendation that the claim be dismissed.

## II. Claims Against Local 53

Dingle brings two claims against Local 53: a claim that the union breached its duty of fair representation because of various conduct on the part of Dingle's union representative, Joe

10

Weinbel, in connection with the investigation into the sexual harassment charge; and a claim for defamation based on Weinbel's allowing other employees to make degrading statements about Dingle.

### A. Duty of Fair Representation

The R&R recommended dismissing Dingle's duty of fair representation claim against Local 53 because the claim was not brought within the six-month statute of limitations applicable to such claims. The statute of limitations for a duty of fair representation claim is six months, see Musto v. Transp. Workers Union of Am., 339 F. Supp. 2d 456, 460 (E.D.N.Y. 2004), and "accrue[s] no later than the time when [the union members] knew or reasonably should have known that . . . a breach ha[s] occurred," Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 278 (2d Cir. 2004) (internal quotation marks omitted). The R&R found that, even assuming Local 53's breach of its duty of fair representation was ongoing throughout Dingle's time as a member of the union, it could only extend until his termination in September 2012, and he did not file his suit against Local 53 until eight months later, in May 2013.[3]

Dingle objects to the dismissal of his duty of fair representation claim, arguing that the union "concealed" certain derogatory statements made by his coworkers "for almost two years, never once investigating what they said." (Pl.'s Objections at 6.) Although a union's fraudulent concealment of a breach of the duty of fair representation may cause the statute of limitations to be tolled until the plaintiff discovers the fraud, see Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 69 (2d Cir. 1995), Dingle has not alleged facts from which the Court could conclude that he is entitled to equitable tolling. Generally, a plaintiff must plead three elements to

---

[3] The R&R inadvertently stated that Dingle's complaint against Local 53 was filed in May 2012; however, the complaint was initially filed in Kings County Supreme Court on May 16, 2013.

11

establish equitable tolling of the statute of limitations on the basis of fraudulent concealment: "(1) wrongful concealment of their actions by defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." Wolf v. Wagner Spray Tech Corp., 715 F. Supp. 504, 508 (S.D.N.Y. 1989) (internal quotation marks omitted). Even reading Dingle's complaint against Local 53 liberally, he has not established any of these factors. Dingle offers no facts demonstrating that Local 53 acted wrongfully in concealing its actions from him, nor any facts suggesting that he was diligently pursuing his rights. Most importantly, Dingle's complaint and other filings contradict his assertion that he did not discover Local 53's alleged breaches until within six months prior to the filing of his complaint. Dingle's claim against the union was predicated primarily on Weinbel's actions during the investigation into Dingle's conduct in 2010, including his alleged failures to provide Dingle with notes regarding the April 2010 meeting or to prevent other employees from making certain statements about Dingle at that meeting. Dingle, however, was undoubtedly aware of this conduct at least as early as August 2010, when he made a formal complaint against Weinbel seeking a copy of the notes from the April 2010 meeting, or in September 2010 when he was provided with the notes of that meeting. (Dingle I Am. Compl. Ex. G.) Furthermore, Dingle's own assertion that Local 53 failed to interview him about those incidents belies any claim that he was completely unaware that they did not investigate the conduct. (See Pl.'s Objections at 6.) Dingle therefore cannot establish that he is entitled to equitable tolling based on fraudulent concealment, and the Court adopts the R&R's recommendation that his duty of fair representation claim be dismissed as untimely.

12


**B. State Law Defamation Claim**

Dingle does not raise any objections to the R&R's recommendation that his state law defamation claim against Local 53 be dismissed. Finding no clear error in the R&R's analysis of that claim, the Court dismisses the defamation claim against Local 53.

## CONCLUSION

The Court hereby adopts the R&R, for the reasons stated above, and dismisses each of Dingle's complaints. The Court also adopts Judge Pohorelsky's Report & Recommendation of January 22, 2014, and denies Dingle's motion to compel payment on the settlement agreement. The Clerk of Court is directed to enter judgment and close each case.

SO ORDERED.

Dated: Brooklyn, New York  
      March *11* , 2014

s/Carol Bagley Amon

Carol Bagley Amon  
Chief United States District Judge

13